(*County Court of Cook County.*)

### Francis Wilkins, Acting British Consul,

#### vs.

### Julius Rosenthal, Public Administrator

(1866.)

EXECUTORS AND ADMINISTRATORS—ENGLISHMAN DYING IN ILLINOIS—APPOINTMENT OF ADMINISTRATOR—BRITISH CONSUL—PUBLIC ADMINISTRATOR—ILLINOIS LAW. When an Englishman dies in Illinois, leaving property and neither relatives nor creditors here, not the British consul, but the public administrator is the

proper party to be appointed administrator, because the former is not amenable to the process of the court, and the latter is the one designated under the Illinois laws which alone control; neither Congress nor the English law have anything to do with the matter.

Petition to be appointed administrator. Heard before Judge James B. Bradwell. The facts are stated in the opinion.

*Messrs. Hervey Anthony & Galt,* for petitioner.

*Messrs. Rosenthal & Pence,* for public administrator.

BRADWELL, J. :—

William Burrill, a British subject, died at Chicago, Illinois, on the 15th day of July, A. D. 1863, leaving neither relatives nor creditors in this state, but leaving money on deposit in the State Savings' Institution, of Chicago, which the bank has refused to pay to her Brittanic majesty's consul, on demand made for that purpose, but expressed its willingness to pay the same to any adminstrator of said state appointed by this court.

On the 24th of October, A. D. 1866, the said Francis Wilkins filed his petition in this court, and prayed to be appointed administrator of said estate upon the sole ground of his being "acting British consul." On the same day, Julius Rosenthal filed his petition in this court, resisting the petition of the British consul, and prayed to be appointed administrator of said estate on the ground that he was public administrator, and that deceased left no relatives or creditors in this state.

In order to properly determine this case, it will be necessary to understand the duties of a consul in regard to the settlement of an estate where the parties interested are subjects of the government from which he is sent; and also to examine the statute of this state in regard to the appointment of administrators.

It is the duty of a consul to look after the interests of the subjects of his own government in the foreign government to which he is sent, and when called upon, to aid with all his pow-

er, such subjects in getting their legal rights, and when property is left in such foreign country, belonging to such foreign subjects, with no one to look after it, it then becomes his duty to see that it is properly cared for, so far as permitted by the local law, and to act, for the time being, as the national agent or attorney of such absent subjects.

According to the general law of nations, it is not the duty of a consul, in case of the death of a subject of his government in the foreign country to which he is sent, leaving personal assets in such country, to do more than he can as consul, under the local law, and whatever he does in the premises must be done by virtue of his office as consul, and not as an officer of a foreign probate court.

In the absence of an express statute conferring the power, wherever a consul seeks to become an administrator, and an officer of a court of a foreign government, he lowers the dignity of his office and government, and is acting out of the line of his duty; it being his duty to watch over the interests of the absent heirs of the deceased, who are subjects of his own government, and when administration is necessary, not to take it himself, but to aid the administrator of the foreign court to do his duty.

Can it be claimed that the court should appoint a British consul administrator today, and when, if tomorrow he should fail to perform his duty, the court should order him to proceed and, upon his refusal, an order to show cause why he should not be attached should be entered, he would have the right to come in and say, "I am her Britannic majesty's consul in Chicago, Ill., and you have no right or power to order me to do anything; you cannot attach me. I defy the probate courts of America to deal with me."

An administrator should never be appointed who cannot be made to feel the power of the court that appoints him, for a willful neglect of his duty. We have thus far spoken of the duties of a consul, in general, under the law of nations, without regard to the acts of congress, the acts of parliament, or the decisions of the English courts. An act of congress on

the powers of consuls, passed 1792, provides that when the laws of the country permit, it shall be the duty of consuls to take possession of the personal estate left by any citizen of the United States who shall die within their consulate, leaving there no legal representative, partner in trade, or trustee by him appointed to take charge of his effects, collect the debts due to the deceased in the country where he died, and pay the debts due from his estate, which he shall have there contracted, and at the expiration of one year from his decease shall transmit the residue to the treasury of the United States. But, if, at any time before such transmission, the legal representatives of the deceased shall appear and demand his effects in their hands, they shall deliver them up. By the act of August, 1856, it is provided that it shall be the duty of consuls, so far as the laws of the country will permit, to protect the property of the deceased from any interference of the local authorities of the country where such citizen shall die. As to the power of consuls under this act, see the very able opinion given by attorney-general Cushing, 7 vol. Opin. 242. Under the act of 1792, cited above, Col. Aspinwall, the American consul-general, applied to the English ecclesiastical court to be appointed administrator on the estate of John Hammond, a citizen of the United States, who died in England, leaving personal assets there.

In delivering the opinion of the court, Sir Herbert Jenner said: "It appears that, on the death of Mr. Hammond, Col. Aspinwall, the American consul in this country, took possession of the property about him, paid his funeral and other necessary expenses, but upon application to Messrs. Baring & Co., they declined to pay over the money in their hands until letters of administration were taken out and they could obtain a valid discharge. * * * I am not aware of any case in which it has been held that, by the law of this country, it is competent to a foreign consul to take possession of the property of a foreigner dying here *in itinere,* domiciled in his own country. * * * Is it then the law and practice of this court that such an administration should be granted? I apprehend

not, and *that the Crown is the party to see that the property of any person dying in its dominion gets into proper hands.* It has been said that by the law of the United States, British consuls may take possesson of the property of British subjects in similar circumstances. But this is not by the law of nations, but by custom or by express enactment, and is not a law that this country is bound to follow; this country has not adopted the principle of reciprocity in this respect. I am of opinion that there is not sufficient evidence to show that the administration ought to be granted as prayed to Col. Aspinwall, and I reject his petition. No claim is made by the Crown." *Aspinwall v. The Queen's Proctor,* 2 Cur. Ecc. 248.

The following authorities sustain the doctrines as laid down in the above case: *In the goods of Beggia,* 1 Add. Ecc. 340; *In the goods of Peter R. Wyckoff,* 3 Sw. & Tr. 20; Dood and Brooks, Probate Practice, 415, and note (q) Cootes' Probate Practice (5th edition), 130; *The Public Administrator v. Hughes,* 1 Bradf. 125; *Ferrie v. The Public Administrator,* 3 Bradf. 249, 265.

The British statutes of 1861, in regard to the right of foreign consuls to administer upon the estates of subjects of their governments dying in England, is as follows:

"SECTION 4. Whenever a convention shall be made between her Majesty and any foreign state, whereby her Majesty's consuls or vice consuls in such foreign state shall receive the same or the like powers and authorities as are hereinafter expressed, it shall be lawful for her Majesty, by order in council, to direct; and from and after the publication of such order in the London *Gazette,* it shall be and is hereby enacted that whenever any subject of such foreign state shall die within the dominions of her Majesty, and there shall be no person present at the time of such death who shall be rightfully entitled to administer to the estate of such deceased person, it shall be lawful for the consul, vice consul, or consular agent of such foreign state, within that part of her majesty's domains where such foreign subject shall die, to take possession and have the custody of the personal property of the deceased, and

to apply the same in payment of his or her debts and funeral expenses, and to retain the surplus for the benefit of the persons entitled thereto; but such consul, vice consul, or consular agent shall immediately apply for and shall be entitled to obtain from the proper court letters of administration of the effects of such deceased person limited in such manner and for such time as to such court shall seem fit.''

The power to say who shall administer upon the estate of a British subject found in our state is not the British government, nor congress.

In fact, congress has no constitutional power to say who shall be an administrator in such a case, nor to enter into a valid convention with her Brittanic majesty for the purpose providing for the appointment of her consuls as administrators by our probate courts.

It is a power vested exclusively in the people of the state of Illinois, and the people have, through their legislature, provided that in case a non-resident dies and leaves estate in this state, and no next of kin, or creditors, that the public administrator shall be appointed administrator of such estate, and having said nothing of the British consul, or any other consul, I agree fully with the English court, *''that this state has not adopted the principle of reciprocity in this respect,''* and that to appoint the British consul would be against the policy of our state government and its express statute, and that until the legislature shall provide otherwise in case of the death of any non-resident leaving property, but no relatives or creditors in this state, that the public administrator *''is the party to see that such property gets into proper hands.''*

The petition of the acting British consul is therefore dismissed at his cost, and administration granted to the public administrator.

NOTE.—See the preceding case.—Ed.